UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-62805-SINGHAL/VALLE

REBECCA SCHADER,

     Plaintiff,

v.

ANDREW SAUL,
Commissioner of
Social Security Administration,

     Defendant.
_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court on Plaintiff Rebecca Schader's Motion for Summary Judgment (ECF No. 22) and Defendant Andrew Saul's, Commissioner of the Social Security Administration, Motion for Summary Judgment and Response (ECF Nos. 23, 24) (the "Motions"). United States District Judge Raag Singhal has referred the Motions to the undersigned for a Report and Recommendation.  *See* (ECF No. 13); *see also* 28 U.S.C. §636(c).

After due consideration of the record and the Motions, and being otherwise fully advised on the matter, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment (ECF No. 22) be **DENIED**, that Defendant's Motion for Summary Judgment (ECF No. 23) be **GRANTED**, and that the Administrative Law Judge's ("ALJ's") Decision be **AFFIRMED** for the reasons set forth below.

## I.   <u>PROCEDURAL HISTORY</u>

This suit involves applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Title II and XVI, respectively, of the Social Security Act, 42 U.S.C § 401 *et seq*. (the "Act").  (R. 178-79, 180-85).[1]  Plaintiff alleged a disability onset date of August 16, 2016.  (R. 178-79, 180-85).  Plaintiff's claim was denied initially and again upon reconsideration.  (R. 99-119).  Thereafter, Plaintiff requested a hearing, which was held before ALJ James Andres on November 26, 2018.  (R. 33-50, 120-22).  Plaintiff, appearing with counsel, testified at the hearing.  (R. 41-44, 46-48).  A Medical Expert and a Vocational Expert also testified at the hearing.  (R. 36-41, 44-45, 48-49).

On February 12, 2019, the ALJ issued a decision denying Plaintiff's applications and finding that Plaintiff was not disabled within the meaning of the Act.  (R. 17, 28).  Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision." (R. 1-7); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Plaintiff now seeks judicial review of the ALJ's Decision.  (ECF No. 1); *see also* 42 U.S.C. § 405(g).  Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

## II.   <u>STANDARD OF REVIEW</u>

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal standards in making his determination.  *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Carson v. Comm'r of Soc. Sec. Admin.*, 440 F. App'x 863, 864 (11th Cir. 2011) (citations omitted); *see*

---

[1] All references are to the record of the administrative proceeding filed as part of the Defendant's Answer.  *See* (ECF No. 15).

*also* 42 U.S.C. § 405(g).  Substantial evidence is "more than a scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Biestek*, 139 S.Ct. at 1154; *Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a scintilla, but less than a preponderance").  A court, however, "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ].'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).  Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.*

To qualify for benefits, a claimant must be disabled within the meaning of the Act.  *See* 42 U.S.C. §§ 423 (standard for DIB) and 1382 (standard for SSI).  A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1)     Is the person presently unemployed?
(2)     Is the person's impairment severe?

(3)     Does the person's impairment meet or equal one of the specific
        impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the
        "Listings")?
(4)     Is the person unable to perform his or her former occupation?
(5)     Is the person unable to perform any other work within the economy?

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  An affirmative answer to any of the above questions

leads either to the next question or, on Steps 3 and 5, to a finding of disability.  *McDaniel v. Bowen*,

800 F.2d 1026, 1030 (11th Cir. 1986).  A negative answer to any question, other than Step 3, leads

to a determination of "not disabled."  *Id.*

Importantly, the burden of proof rests on the claimant through Step 4.  *Phillips v. Barnhart*,

357 F.3d 1232, 1241 n.10 (11th Cir. 2004).  At Step 4, the ALJ must assess: (i) the claimant's

residual functional capacity ("RFC"); and (ii) the claimant's ability to return to her past relevant

work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The regulations define RFC as that

which an individual is still able to do despite the limitations caused by her impairments.  20 C.F.R.

§§ 404.1545(a), 416.945(a).  The ALJ will "assess and make a finding about [the claimant's RFC]

on all the relevant medical and other evidence" in the case.  20 C.F.R. §§ 404.1520(e), 416.920(e).

The RFC assessment is used to determine whether the claimant can return to her past relevant work

under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled."  *Phillips*, 357

F.3d at 1238 (citations omitted).  If a claimant cannot return to her past relevant work, then the

ALJ proceeds to Step 5.  *Id.*

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to

determine whether the claimant "can make an adjustment to other work."  20 C.F.R.

§§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Phillips*, 357 F.3d at 1239 (citation omitted).  The ALJ

must determine if there is other work available in significant numbers in the national economy that

the claimant has the ability to perform.  *Phillips*, 357 F.3d at 1239.  If the claimant can make the

adjustment to other work, the ALJ will determine that the claimant is not disabled.  *Id.*  Conversely, if the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled.  *Id.*  The ALJ may determine whether the claimant has the ability to adjust to other work in the national economy by either: (1) applying the Medical Vocational Guidelines (contained within 20 C.F.R. part 404, subpart P, appendix 2); or (2) using a Vocational Expert, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy.  *Id.* at 1239-40.

### III.   THE HEARING RECORD

**A.  Plaintiff's Background and Relevant Testimony**

Plaintiff, born on July 23, 1962, was 56 years old at the time of the administrative hearing. (R. 178, 180).  Plaintiff has been divorced for more than 20 years and has three adult children. (R. 179, 279).  Plaintiff lives with and cares for one son, who is autistic.  (R. 78, 211).  Plaintiff is a high school graduate and worked as a nail technician/manicurist from 2001 through 2014.[2] (R. 198, 218).  Plaintiff testified that she loved her job, and agonized about having to reduce her work hours and ultimately stop working due to worsening pain in her lower back.  (R. 23, 42-43, 47, 198).

In 2009, Plaintiff fell.  (R. 41).  As a result of her fall, Plaintiff began to experience left leg and low back pain.  (R. 43, 279).  Plaintiff testified that she cannot sit, stand, or walk for long periods due to pain.  (R. 46).  Plaintiff can sit for about 15 minutes before having to move around and change positions.  (R. 46-47).  As a result, it would take Plaintiff up to two hours to finish a manicure that others could finish in half an hour.  (R. 47).  Plaintiff described constant back pain,

---

[2] Plaintiff's February 2017 Disability and Work History Reports reflect that Plaintiff worked until April 2014.  (R. 198, 203).

for which she took medication, but "[n]othing helps." (R. 43). Regarding her daily activities, Plaintiff testified that she gets up in the morning, takes her medications, and usually stays in the living room watching television. (R. 48).

### B. Reports to Social Security Administration

#### February 2017 Disability Report

In a February 2017 Disability Report completed by Plaintiff's attorney on her behalf, Plaintiff listed the following medical conditions as affecting her ability to work: bulging disc; degenerative disc disease; pinched nerve; scoliosis; and severe back pain. (R. 197). Plaintiff denied suffering from any mental impairments. (R. 200). Plaintiff stopped working in April 2014 because of these conditions. (R. 198).

According to Plaintiff, she walked approximately 1 hour, stood for 2 hours, and sat for 6 hours during the typical workday. (R. 199). Plaintiff reported that she did not have to stoop, kneel, crouch, crawl, handle large objects or reach at work. (R. 199).

#### February 2017 Work History Report

In a February 2017 Work History Report, Plaintiff reported that as a manicurist, she walked 1 hour, stood 2 hours, and sat 6 hours in an 8-hour workday. (R. 204). Plaintiff also reported that her job did not require her to stoop, bend, kneel, crouch, or crawl. *Id*.

#### March 2017 Adult Function Report

In March 2017, Plaintiff submitted an Adult Function Report.[3] (R. 210-17). Plaintiff reported that she "can't sit or stand for long periods [and] has to constantly change positions." (R. 210). Plaintiff stated that walking was also difficult because of pain. *Id*.

---

[3] The Adult Function Report was completed by a third-party on Plaintiff's behalf. (R. 217).

In terms of activities of daily living, Plaintiff reported that she would not get out of bed until her medication took effect.  (R. 211).  Once out of bed, she would lie on the couch, and then alternate between lying on the couch and resting in bed.  *Id.*  Plaintiff takes care of her adult autistic son by preparing simple microwave meals and making sure that he eats.  (R. 211, 212).  Plaintiff performs some household chores, like cleaning the bathroom and sweeping the floor as often as she can, sometimes once a month.  (R. 212).  Plaintiff's daughters also help with the housework. *Id.*  Plaintiff sits on the patio every few days.  (R. 213).  In addition, Plaintiff drives and goes grocery shopping.  *Id*.  At the store, Plaintiff uses a motorized cart or leans on a grocery cart "to get around."  *Id*.  Plaintiff can pay her bills, count change, handle a savings account, and use a checkbook.  *Id*.  According to Plaintiff, she stopped socializing and going out with friends, and the pain interrupts her sleep.  (R. 211, 215).

Regarding physical limitations caused by her pain, Plaintiff reported difficulty squatting, bending, standing, walking, sitting, kneeling, and climbing stairs.  (R. 215).   Plaintiff stated she could only walk a few feet before having to sit down for up to 20 minutes.  Plaintiff indicated that she did not need a cane or other assistive device to walk.  (R. 216).  Plaintiff takes medications for her conditions, with no adverse side effects.  (R. 217).  Regarding her mental condition, Plaintiff reported no problem paying attention for "as long as needed."  (R. 215).  Plaintiff could follow spoken instructions and could "mostly" follow written instructions, got along "well enough" with authority figures, and could handle changes in her routine.  (R. 215-16).

*June 2017 Work History Report*

In a June 2017 Work History Report, Plaintiff reported that during the typical workday, Plaintiff walked ½ hour, stood for ½ hour, and sat for 2 hours.  (R. 219, 220, 221, 222, 223).  She did not kneel, crouch, or crawl.  *Id.; but cf.* (R. 199, 204) (February 2017 Disability Report and

Work History Report, respectively, reflecting that Plaintiff walked approximately 1 hour, stood for 2 hours, and sat for 6 hours during the typical workday).

### B.  Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing and categorized Plaintiff's past relevant work as a manicurist (a sedentary job with an SVP of 3).  (R. 44-45).

The ALJ asked the VE whether a hypothetical individual of Plaintiff's age, education, and previous work experience, who could perform light work (lifting up to 10 pounds) and who could stand and sit for six hours in an eight-hour workday, could perform Plaintiff's past relevant work. (R. 48).  The VE testified that such an individual could perform Plaintiff's past relevant work as a manicurist.  (R. 48).  If, however, the hypothetical individual were further limited to sitting for only 15 minutes at a time, then such an individual would not be able to perform Plaintiff's past relevant work.  (R. 48-49).  The ALJ did not proceed to Step 5.

## IV.    THE ALJ'S DECISION

On February 12, 2019, after reviewing the evidence and conducting the requisite five-step analysis, the ALJ concluded that Plaintiff "has not been under a disability within the meaning of the Social Security Act from August 16, 2016, through the date of this decision."  (R. 17).

At Step 1, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since August 16, 2016, the alleged onset date.  (R. 18).

At Step 2, the ALJ found that Plaintiff's degenerative disc disease of the cervical and lumbar spine were severe impairments.[4]  (R. 18).

---

[4] Plaintiff does not challenge the ALJ's finding that her unspecified depressive disorder was not a severe impairment.  *See generally* (R. 18-21).

At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equal the severity of one of the Listings.  (R. 21-22).

At Step 4, the ALJ determined that Plaintiff has the residual functional capacity to perform light work, with the following restrictions: (i) lifting, carrying, pushing, and/or pulling up to 10 pounds frequently and 20 pounds occasionally; and (ii)  sitting, standing, and walking for up to six hours in an 8-hour workday.  (R. 22).  The ALJ determined that Plaintiff is capable of performing her past relevant work as a nail technician/manicurist.  (R. 27).  Accordingly, the ALJ did not proceed to Step 5 of the evaluation process.  (R. 27).

## V.    <u>DISCUSSION</u>

Plaintiff raises three primary arguments on appeal.  First, Plaintiff argues that the ALJ erred in weighing the medical opinions of: (i) Dr. Allan Goldstein, an expert who testified at the administrative hearing (ECF No. 22 at 5-12); (ii) Dr. Frank Walker, a State Agency reviewer upon reconsideration (*id.* at 12-14); and (iii) Dr. Dahlia Gordon, a State psychological consultative examiner.  *Id.* at 15-18.  Relatedly, Plaintiff next argues that the ALJ's RFC assessment is flawed in that it does not fully consider the opinions of Drs. Goldstein (regarding Plaintiff's physical limitations) and Gordon (regarding Plaintiff's mental limitations), and fails to include environmental restrictions resulting from Plaintiff's use of narcotic medications.  *Id.* at 18-19. Lastly, Plaintiff claims that the ALJ erred in not properly evaluating Plaintiff's subjective symptoms and limitations.  *Id.* at 19-24.  As discussed below, the undersigned finds that the ALJ applied the proper legal standards and that the ALJ's Decision is supported by substantial evidence. Accordingly, the ALJ's Decision should be affirmed.

### A.    **The ALJ Properly Weighed the Medical Opinions**

Plaintiff challenges the ALJ's assignment of: (i) "little weight" to Dr. Goldstein's opinion that Plaintiff equaled Listing 1.04A; (ii) "great weight" to Dr. Walker's opinion that Plaintiff could

perform light work; and (iii) no weight to Dr. Gordon's opinion that Plaintiff "appear[ed] capable of performing simple and repetitive tasks."  *See generally* (ECF No. 22 at 5-17).

In determining whether a claimant is disabled, Social Security regulations require the ALJ to consider and evaluate every medical opinion received.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive.").  In doing so, the ALJ is required to consider certain factors, including: (i) whether the claimant has an examining or treating relationship with the medical source; (ii) the medical source's area of specialization; (iii) whether the medical source's opinion is well-supported; and (iv) whether the opinion is consistent with the record as a whole.  *Id.*  An ALJ must state with particularity the weight given to different medical opinions and the reasons for doing so.  *Baez v. Colvin*, No. 14-21862-CIV, 2016 WL 11110181, at *7 (S.D. Fla. Mar. 2, 2016) (citing *Sharfarz v. Bowen*, 825 F. 2d 278, 279 (11th Cir. 1987).

In this regard, the opinion of a treating physician[5] must be given substantial or considerable weight unless the ALJ articulates good cause[6] for discounting it.  *Winschel*, 631 F.3d at 1179 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *Phillips*, 357 F.3d at 1240-41.

___

[5] A "treating source" is the claimant's own medical source who has provided the claimant with medical treatment or evaluation, and who has had "an ongoing relationship" with the claimant.  20 C.F.R. § 404.1527(a)(2).  An "ongoing relationship" generally means the claimant sees, or has seen, the physician or psychologist "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)."  *Id.*  A medical source who has "treated or evaluated [the claimant] only a few times or only after long intervals (*e.g.*, twice a year)" may be considered a treating source "if the nature and frequency of the treatment or evaluation is typical for [the claimant's] condition."  *Id.*  Conversely, a medical source is *not* a treating source if the relationship "is not based on [the claimant's] need for treatment or evaluation, but solely on [the claimant's] need to obtain a report in support of [the claim] for disability."  *Id.*

[6] "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"  *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).

The opinion of a consultative examining source, however, does not merit any special weight.  *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).  Nonetheless, the opinion of a consultative examining source generally merits more weight than the opinion of a non-examining source, like a State Agency reviewer.  *See Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).  Indeed, the opinion of a non-examining source "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision."  *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (citing *Broughton*, 776 F.2d at 962).

### 1. The ALJ Properly Considered Dr. Goldstein's Opinion Testimony

Dr. Goldstein reviewed Plaintiff's medical file and testified as an expert at the administrative hearing.  More specifically, Dr. Goldstein testified that Plaintiff "has chronic pain secondary to lumbosacral spine disease that goes back to 2009, and cervical spine disease that was documented in September of 2016[] with a CT scan."  (R. 36).  Based on Plaintiff's 9-year history of reported pain, Dr. Goldstein opined that Plaintiff "would equal [Listing] 1.04A because of chronic pain."[7]  (R. 36).

---

[7] Listing 1.04A, setting forth the criteria for presumptive disability due to disorders of the spine, provides:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R., Part 404, Subpart P, Appendix 1.

To support his opinion, Dr. Goldstein cited to the following as "objective evidence of significant anatomical abnormality:" (i) Plaintiff's June 2012 MRI[8] results (Exh. 2F) showing "facet hypertrophy," "resulting canal stenosis" and "L4/5 disease" (R. 36, 37); (ii) an October 2016 CT scan of Plaintiff's cervical spine showing C3 through C-7 narrowing (Exh. 1F) (R. 36, 37); and (iii) rehab notes[9] (Exh. 4F) "indicat[ing] that [Plaintiff] has pain with range of motion" (R. 38). Nonetheless, Dr. Goldstein acknowledged that "motor and sensory abnormalities are not described well enough for [Dr. Goldstein to opine] that [Plaintiff] meets [Listing] 1.04A."  (R. 36).  Thus, Dr. Goldstein agreed that the was "no motor or sensory abnormality" and Plaintiff's "limiting factor is the pain."  (R. 38, 39).  Thus, because "there is not good documentation of motor or sensory problems," Plaintiff did not meet Listing 1.04A.  *See* (R. 37).  Dr. Goldstein added, "If [Plaintiff] did not have the pain, then I would agree with [the ALJ] that there'd be very little limitation."  (R. 38).

The ALJ gave "little weight" to Dr. Goldstein's opinion that Plaintiff equaled Listing 1.04(A) because of her pain.  (R. 22).  As the ALJ explained, Dr. Goldstein's opinion was inconsistent with the medical evidence and based on Plaintiff's subjective complaints.  (R. 22, 26).  In addition, the ALJ noted Plaintiff's conservative treatment and positive results from pain medications and home exercises to support his decision to discount Dr. Goldstein's opinion. (R. 22).

---

[8] The June 2012 MRI is not part of the administrative record.  (R. 24).  Rather, the MRI is summarized in treatment notes from Dr. Stuart Krost (Plaintiff's pain management doctor). Dr. Krost's notes between September 2016 and September 2018 all contain the following statement: "MRI of the lumbar spine from 6/21/12 revealed a 3mm anteriolisthesis of L3 on L4 with a disk bulge and facet hypertrophy with resultant canal stenosis. There is a disk bulge at L4/5."  *See, e.g.*, (R. 280) (9/7/16 treatment note); (R. 357) (9/11/18 treatment note).

[9] The documents that Dr. Goldstein calls "rehab notes" are actually Dr. Krost's treatment notes.

Plaintiff argues, among other things, that the ALJ erred in not articulating "good cause" for discounting the opinion of Dr. Goldstein.[10] (ECF No. 22 at 12).  But Plaintiff's argument misstates the law.  First, an ALJ is not required to discuss a particular Listing by name or even to consider expert opinion in every Listings case.  *See Hutchison v. Bowen,* 787 F.2d 1461, 1463 (11th Cir. 1986) (holding that the ALJ implicitly found that the claimant did not meet a Listing because it was clear from the record that the ALJ had considered the relevant law and evidence); *Prince v. Comm'r of Soc. Sec. Admin.*, 551 F. App'x 967, 970 (11th Cir. 2014) (holding ALJ's finding that an impairment, or combination of impairment, does not meet or equal a listing may be made implicitly).  Moreover, an ALJ does not have to "mechanically recite the evidence leading to [his] determination."  *Hutchison,* 787 F.2d at 1463.  Lastly, it is Plaintiff who bears the burden of demonstrating that her impairment meets or equals a listed impairment.  *Barron v. Sullivan,* 924 F.2d 227, 229 (11th Cir. 1991).  Plaintiff has not met that burden here.

Second, Dr. Goldstein is not a treating source to whose opinion the ALJ would generally accord greater deference or controlling weight.  Indeed, the opinion of a non-examining source, like Dr. Goldstein, "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision."  *Swindle*, 914 F.2d at 226 n.3 (citing *Broughton*, 776 F.2d at 962).  Thus, the ALJ was not required to articulate "good cause" for rejecting Dr. Goldstein's opinion.  Rather, the weight given to a non-examining physician's opinion depends

---

[10] Plaintiff also argues in passing that the ALJ failed to specifically discuss several of the factors in 20 C.F.R. §§ 404.1527(c), 416.927(c) in evaluating Dr. Goldstein's opinions.  (ECF No. 22 at 5).  This argument fails for two reasons.  First, arguments raised "in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed waived."  *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F. 3d 1418, 1422 (11th Cir. 1998) (citation omitted).  Second, the regulations do not require the ALJ to explicitly address each factor.  *See Brock v. Comm'r, Soc. Sec. Admin.,* 758 F. App'x 745, 751 (11th Cir. 2018); *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2018).

on the underlying clinical findings and consistency with other evidence.   20 C.F.R.

§§ 404.1527(b)-(c), 416.927(b)-(c).   Here, the ALJ meticulously discussed the inconsistencies

between Dr. Goldstein's opinion and the record evidence.   The ALJ stated:

> . . . [T]he undersigned does not concur with [Dr. Goldstein's] opinion because it is inconsistent with the medical evidence of record.
>
> Dr. Goldstein confirmed in his testimony that the objective medical evidence of record generally showed unremarkable musculoskeletal examinations of the claimant with 5/5 motor strength throughout, normal sensory, normal range of motion and a normal gait (Ex BIB, B2B, B4B, and B7B).  He also noted that the diagnostic test of record generally showed degenerative disc disease. Further, when asked how he reached his conclusion of an impairment equaling a listing, Dr. Goldstein could not point out to any objective evidence that would support this[11] but indicated that he reached this conclusion based on the claimant's subjective complaints of pain lasting for nine year.  While the undersigned has taken into consideration the claimant's objective complaints, the undersigned finds that there is no objective evidence to support a disabling condition. The diagnostic tests were generally normal with the exception of degenerative changes of the lumbar spine, disc bulge and facet hypertrophy with resultant stenosis noted in an MRI of 2012 and degenerative changes of the cervical spine with no fractures noted in a CT scan of 2016 (Ex BlF at 7 and Ex B7F at 2).
>
> Accordingly, the record contains no indication of herniated discs, compressed cords, fractures or any other condition that would cause significant functional limitations that would equate to a disabling condition.  Further, in reiteration, the undersigned notes that musculoskeletal and neurological examinations were generally unremarkable.  Furthermore, the claimant has only required conservative treatment with pain medication with medication, which she reported helped with little effect, as well as some home exercises. Consequently, the undersigned accords little weight to the opinion of Dr. Goldstein[] . . . as he placed main emphasis on the claimant's subjective complaints.  Nevertheless, the undersigned realizes that the claimant does have some limitations due to her back disorder. Hence, the undersigned finds that the opinion of the DDS reviewing physician, Frank Walker,

---

[11] Plaintiff challenges the ALJ's statement that "Dr. Goldstein could not point out to any objective evidence" that would support his opinion.  (ECF No. 22 at 6).  Despite this misstatement, the record confirms that the ALJ was fully aware of Dr. Goldstein's reference to the June 2012 MRI and October 2016 CT scan.  *See* (R. 36-37) (Dr. Goldstein's testimony at the administrative hearing). In any event, the ALJ's statement implicitly reflects the ALJ's rejection of the inherent value of evidence.  As the ALJ explained in the decision, these test results simply do not support Dr. Goldstein's disabling testimony.  *See* (R. 24) (ALJ's discussion of June 2012 MRI); (R. 25) (ALJ's discussion of October 2016 CT scan).

> M.D., who limited the claimant to work a light level of exertion is more consistent
> with the overall medical evidence of record (Ex B5A-B6A).

(R. 22).

The ALJ further stated:

> As for the opinion evidence, the undersigned accords little weight to the opinion of
> medical expert, Allan Goldstein, M.D. that the claimant's impairment equaled a
> listing 1.04A as of her alleged onset date.  The undersigned finds that this is
> inconsistent with the medical evidence of record.  When asked how he reached this
> conclusion, Dr. Goldstein could not point out to any objective evidence that would
> support this[12] but indicated that he reached this conclusion based on the claimant's
> subjective complaints.  While the undersigned has taken into consideration the
> claimant's subjective complaints, there is no objective evidence to support a
> disabling condition.  The undersigned notes that musculoskeletal and neurological
> examinations were generally unremarkable and diagnostic tests were generally
> normal with the exception of degenerative changes discussed herein.  The record
> contains [no] indication of herniated discs, compressed cords or any other condition
> that would cause significant functional limitations rendering [Plaintiff] disabled.

(R. 26).

Upon review of the record and the ALJ's fulsome discussion of the medical evidence, *see*

(R. 19-27), the undersigned finds that substantial evidence supports the ALJ's Decision.  Among

other evidence, for example, the ALJ referenced Plaintiff's January 2016 and September 2016

emergency room visits to Broward Health, noting that "despite the remote history of pain

management treatment for a back condition, the examination of her back was nontender and

showed normal range of motion" and Plaintiff denied back pain.  (R. 25); *see also* (R. 270)

(1/19/16 hospital note reflecting nontender back and normal range of motion); (R. 255, 257)

(9/30/16 hospital note reflecting no back pain, nontender back, and normal musculoskeletal range

of motion).  The ALJ also noted Plaintiff's two-year treatment history with Dr. Krost, which

consistently reflected unremarkable musculoskeletal examinations with 5/5 motor strength, normal

---

[12] *See* note 11, *supra*.

sensory, normal range of motion, and normal gait.  (R. 22); *see also* (R. 279-92, 300-03, 308-57) (Dr. Krost's treatment notes from September 2016 to September 2018).  In addition, the ALJ noted Dr. Krost's treatment notes reflected that Plaintiff's pain medications "allowed her to remain active with less pain."  (R. 24); *see, e.g.*, (R. 308, 312); *see also* (R. 300) ("Her medications keep the pain tolerable with minimal side effects.").  In addition, physical examinations showed that Plaintiff was in "no acute distress" and had "good toe and heel walking."  (R. 24); *see e.g.,* (R. 312, 314, 316, 318).  Although Dr. Krost noted Plaintiff's "loss of normal lordotic curvature due to spasm" and "tenderness of the lumbar midline and right sacroiliac joint," Plaintiff's lower extremities showed no sign of atrophy, with normal range of motion, and 5/5 motor strength throughout.  (R. 24); *see e.g.,* (R. 308-57).  During the two years of pain management, Plaintiff "reported that her medications kept the pain tolerable" and "allowed for an increased level of activity."  (R. 24); *see also* (R. 279-92, 300-03, 308-57).  The ALJ properly considered this conservative course of treatment as inconsistent with Dr. Goldstein's disabling opinion.

Furthermore, although the 2012 MRI and October 2016 CT scan showed degenerative changes of the lumbar and cervical spine, the record is devoid of any functional limitations resulting from Plaintiff's condition.  Simply put, Plaintiff's diagnoses of degenerative disc disease, without more, is not sufficient to establish the severity of her impairment or any resulting work-related limitations.  *See, e.g.*, *Wood v. Astrue*, No. 8:10-CV-2373-T-17AEP, 2012 WL 834137, at *5 (M.D. Fla. Feb. 14, 2012) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005)), *report and recommendation adopted*, No. 8:10-CV-2373-T-17AEP, 2012 WL 834132 (M.D. Fla. Mar. 13, 2012) ("a diagnosis alone is insufficient to establish that a condition caused functional limitations); *see also Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality'

is insufficient; instead, the claimant must show the effect of the impairment on her ability to work.") (quotation omitted).   In addition, Plaintiff worked until April 2014, which further undermines her claim of disabling pain.

Relatedly, Plaintiff argues that the ALJ replaced his own judgment for that of the medical expert by "making a determination as to the severity of [Plaintiff's] impairments based on his own inaccurate characterization of the record, which fails to adequately appreciate the subjective complaints and their relationship to the objective medical findings."   (ECF No. 22 at 11). Plaintiff's argument misses the mark.   Although the ALJ may not make medical findings himself, "it is [the ALJ's] responsibility to resolve conflicting medical opinions."   *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016) (citations omitted).   Here, the ALJ did just that by evaluating Dr. Goldstein's opinion against other record evidence and assigning it "little weight" as inconsistent and unsupported by the record.   This is precisely what the ALJ is expected to do. Against this backdrop, the undersigned finds that the ALJ applied the proper legal standards to evaluate Dr. Goldstein's opinion, and substantial evidence supports the ALJ's Decision.

### 2.   *The ALJ Properly Considered Dr. Walker's Opinion*

Next, Plaintiff argues that the ALJ erred in assigning "great weight" to the opinion of State Agency reviewer Dr. Walker.   (ECF No. 22 at 12).   Specifically, Plaintiff asserts that Dr. Walker's opinion was entitled to less weight than Dr. Goldstein's because Dr. Walker: (i) is a pediatrician, not an internist or specialist (*Id.* at 13); and (ii) had access to only 12 of Dr. Krost's 25 treatment notes, while Dr. Goldstein (who reviewed the record in the fall of 2018) had access to all 25 visits, thus giving Dr. Goldstein "a more comprehensive and longitudinal perspective than Dr. Walker." *Id.*   Plaintiff's arguments fail for several reasons.

First, although not a treating or examining physician, the opinion of a State Agency examiner, like Dr. Walker, may be entitled to great weight if supported by the evidence, as in this case. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); SSR 96-6P, 1996 WL 374180, at *1 (July 2, 1996) ("Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review.").   The ALJ properly considered Dr. Walker's opinion in light of the record as a whole. *See Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 874 (11th Cir. 2011) (holding that the ALJ did not err in assigning significant weight to state agency medical consultants instead of the treating physician "because their opinions were supported by the record"); *Ogranaja v. Comm'r of Soc. Sec.*, 186 F. App'x 848, 851 (11th Cir. 2006) (holding that substantial evidence supported the ALJ's decision to assign great weight to non-examining state agency physicians' opinions that "were supported by and consistent with the record as a whole"); 20 C.F.R. §§ 404.1527(b)-(c), 416.927(b)-(c) (the weight a non-examining physician's opinion receives depends on its clinical findings and consistency with other evidence).   Here, the ALJ noted that Dr. Walker's opinion was "consistent with the overall medical evidence of record and particularly the physical examinations, which show that [Plaintiff] had normal range of motion, normal strength in all joints and extremities, and normal sensory and reflexes."   (R. 27).   The undersigned finds no error in the ALJ's assessment.   It is not for the undersigned to "'decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ].'"   *Winschel*, 631 F.3d at 1178 (citation omitted).   Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence."   *Bloodsworth,* 703 F.2d at 1239 (citing 42 U.S.C. § 405(g)).

Second, Plaintiff's argument that Dr. Walker had only reviewed Dr. Krost's treatment notes through July 2017 (a total of 12 visits), while Dr. Goldstein had the opportunity to review all 25 visits, (ECF No. 22 at 13), ignores the duplicative, cut-and-paste nature of Dr. Krost's treatment notes.  As the ALJ concisely stated, Dr. Krost's treatment notes for nearly two years are "generally unchanged, almost as a carbon copy with only some very slight deviation in details reported."  (R. 24).  Thus, whether Dr. Krost considered 12 visits or 25, the result would remain unchanged, as the treatment notes are simply cumulative, reiterating Plaintiff's diagnosis of degenerative disc disease and conservative treatment with monthly prescriptions for anti-inflammatories and narcotic pain medications.  Consequently, nothing in Dr. Krosts' post-July 2017 treatment notes would have affected Dr. Walker's or the ALJ's ultimate determination.  *See Berg v. Saul*, No. 19-CV-60521, 2020 WL 1237044, at *10 (S.D. Fla. Feb. 27, 2020), *report and recommendation adopted*, No. 19-CV-60521, 2020 WL 1235998 (S.D. Fla. Mar. 13, 2020) (finding that failure of ALJ to specifically consider evidence that was "cumulative of other evidence in the record" did not affect the ALJ's ultimate determination).

Lastly, Plaintiff argues, without any legal support, that Dr. Walker's opinion is worthy of less weight simply because he is a "self-described" pediatrician.  (ECF No. 22 at 13 n.8).  This argument ignores the fact that State Agency physicians are considered experts in the field.  SSR 96-6P, 1996 WL 374180, at *3 (providing that opinions of State Agency medical and psychological consultants must be treated as expert opinion evidence).  State Agency medical consultants are considered experts in Social Security disability programs and their opinions may be entitled to controlling weight if supported by evidence in the record.  *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (the more consistent a medical opinion is with the record as a whole, the more weight the ALJ may assign to that opinion); *see also* 20 C.F.R. §§ 404.1527(e),

416.927(e); SSR 96-6P, 1996 WL 374180, at *3 (noting that opinions from State Agency consultants may be entitled to greater weight than the opinions of treating or examining sources in appropriate circumstances); SSR 17-2P, 2017 WL 3928306, at *3 (Mar. 27, 2017) (noting that State Agency medical or psychological consultants are "highly qualified medial sources who are also experts in the evaluation of medical issues in disability claims"); *Jarrett*, 422 F. App'x at 874 (concluding that ALJ did not err in giving treating physician's opinion little weight while giving significant weight to the opinions of the State Agency consultants).

Thus, substantial evidence supports the ALJ's decision to assign "great weight" to Dr. Walker's opinion, and the ALJ applied the proper legal standards.

### 3. The ALJ's Error in Not Assigning Weight to Dr. Gordon's Opinion was Harmless

On July 3, 2017, Dr. Gordon conducted a consultative examination of Plaintiff. (R. 294-98). Plaintiff argues that the ALJ erred in: (i) failing to assign any weight Dr. Gordon's opinion; and (ii) failing to explain why the ALJ did not adopt Dr. Gordon's statement that Plaintiff "appeared capable of performing 'simple and repetitive tasks.'" (ECF No. 22 at 15). Plaintiff claims that had the ALJ given greater weight to this opinion and limited Plaintiff to simple and repetitive tasks (i.e., "unskilled" work), then Plaintiff would have been precluded from her past relevant work as a manicurist (i.e., "semi-skilled" work), and would have been declared disabled at Step 5 due to her advanced age under the Medical-Vocational Guidelines.[13] *Id.* at 16. According to Plaintiff, the ALJ failed to "articulate any rationale for discounting, even on an implied basis, the opinion of Dr. Gordon." *Id.*

---

[13] To be clear, Plaintiff does not challenge the ALJ's Step 2 finding that Plaintiff's unspecified depressive disorder was not a severe impairment.

Social Security regulations require the ALJ to consider and evaluate every medical opinion received in determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). Thus, Plaintiff is correct that the ALJ erred in failing to assign a specific weight to Dr. Gordon's opinion. Nonetheless, while the ALJ must state with particularity the weight given to each medical opinion and the reasons why, "in limited circumstances, the failure of an ALJ to state the weight given to the medical opinion of a physician may be harmless error." *Ostos v. Astrue*, No. 11-23559-CIV, 2012 WL 6182886, at *13 (S.D. Fla. Nov. 20, 2012) (citation omitted). In light of the ALJ's detailed review and substantive consideration of Dr. Gordon's opinion, *see* (R. 19-21), this case presents such a circumstance. Indeed, the Eleventh Circuit has held that where the ALJ's decision discusses the physician's finding within his determination, and the findings are consistent with the record, then the ALJ's failure to state what weight he gave the examining physician was harmless error. *See Kaplowitz v. Acting Comm'r of Soc. Sec.*, 806 F. App'x 711, 717-18 (11th Cir. 2020) (finding failure to state with particularity the weight given to a medical opinion was "harmless error because it did not affect the ALJ's ultimate decision.") (citation omitted); *Caldwell v. Barnhart*, 261 F. App'x 188, 190-91 (11th Cir. 2008) (holding the ALJ's error in failing to assign weight to a medical provider's opinion was harmless because the ALJ had discussed the physician's findings within the determination and the findings were not inconsistent with the record).

Here, the ALJ devoted more than two pages discussing Dr. Gordon's July 2017 consultative examination. *See* (R. 19-21). Although the ALJ did not discuss every single line in the opinion (nor was he required to), the ALJ liberally relied upon Dr. Gordon's examination results to conclude that Plaintiff's unspecified depressive disorder was not a severe impairment.

Notably, Plaintiff does not challenge this determination.  The following excerpt is but one of many examples of the ALJ's fulsome discussion of Dr. Gordon's opinion:

> On mental status examination, Dr. Gordon noted that the claimant's attention appeared to be close to within normal limits. [Claimant] also appeared to be oriented in all spheres. Based on [claimant's] presentation during the evaluation, Dr. Gordon estimated that the claimant's intellectual ability was within the average range. [Claimant] also appeared to be capable of independently managing her finances. Judgment and insight appeared to be fair. Overall, the claimant described experiencing some depressive symptoms, which she often attributed to the declines in [claimant's] physical condition. *At this time, [claimant] appeared to be capable of performing simple and repetitive tasks based on her cognitive status*. However, the claimant described her motivation as being limited by her depressive status. [Claimant] also generally reported being limited by declines in her physical status and by her pain symptoms. Dr. Gordon noted that the claimant's prognosis for employment appeared to be predominantly dependent on [claimant's] medical condition and on her dependence of the use of narcotic medication. [Dr. Gordon] also noted some exhibited ADHD symptoms characterized but this was not ruled out. Moreover, on the Rey Fifteen Item Memory Test, [claimant] was able to recall fifteen of fifteen items, which generally would contraindicate the production or exaggeration of symptomatology in order to achieve primary or secondary gains. Dr. Gordon offered a diagnosis of unspecified depressive disorder.

(R. 19) (emphasis added).

Accordingly, Plaintiff's argument that the ALJ failed to consider Dr. Gordon's statement that Plaintiff "*appears to be capable of performing simple and repetitive tasks based on her cognitive status*" is misplaced.  As evidenced in the emphasized language in the above quote, the ALJ considered Dr. Gordon's opinion and discussed the challenged language in the decision.  *See* (R. 19).  Ultimately, whether a claimant is disabled and unable to work is an issue reserved for the Commissioner.  20 C.F.R. §§ 404.1527(d), 416.927(d); *see Denomme v. Comm'r of Soc. Sec.*, 518 F. App'x 875, 877-78 (11th Cir. 2013).

Furthermore, the ALJ's decision not to limit Plaintiff to simple repetitive tasks is supported by the record and Dr. Gordon's opinion.[14]  In finding that Plaintiff was only mildly limited in her ability to understand, remember, and apply information, the ALJ stated:

> In this area, the claimant has a mild limitation. In a function report adult, the claimant reported that she did not need reminders to take care of personal needs and grooming, take medications, or go places (Ex B4E). She also engages in activities that require a significant ability to understand, remember and apply information such as driving a car, cooking and shopping in stores. Further, she is able to pay bills, count change, handle a savings account and use a checkbook and/or money orders. She finished conversations, reading, and watching television and movies. She could follow written instruction well if she concentrated, which she generally did. She could also follow spoken instructions well. Consultative examiner, Dr. Gordon noted that the claimant's attention appeared to be close to within normal limits. [Claimant] also appeared to be oriented in all spheres. Based on [claimant's] presentation during the evaluation, Dr. Gordon estimated that the claimant's intellectual ability was within the average range. [Claimant] also appeared to be capable of independently managing her funds. Throughout the treatment notes of record, the claimant is described as alert and well oriented (Ex B1F at 3-5 and 18, B2F, B4F, and B7F). Based on the aforementioned, the undersigned finds that the claimant has no more than mild limitation in this domain.

(R. 20).

Disregarding the language in the ALJ's Decision, Plaintiff nonetheless speculates that Dr. Gordon's statement of Plaintiff's ability to perform "simple and repetitive tasks," if adopted,

---

[14] Among the substantial evidence supporting the ALJ's Decision are Dr. Krost's two-years' worth of treatment notes, none of which reflect any mental impairment that would limit Plaintiff to simple and routine tasks.  (R. 279-92, 300-03, 308-57).  Likewise, during emergency room visits in January and September 2016, Plaintiff was alert and cooperative and denied depression or anxiety. (R. 255, 270).  Accordingly,  the ALJ found that Plaintiff's depression was not severe and did not meet or equal any of the Listings.  (R. 20-21).  The ALJ found that Plaintiff had only mild limitations in understanding, remembering, or applying information; no limitation interacting with others; mild limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing herself.  (R. 20-21).  Plaintiff does not contest the ALJ's mental health findings, which further undermines her argument that she should have been limited to "simple and routine" tasks.  In addition, Plaintiff consistently denied any mental health issues. *See, e.g.,* (R. 200) (February 2017 Disability Report in which Plaintiff denied suffering from any mental conditions); (R. 215-16) (March 2017 Adult Function Report reflecting that Plaintiff could understand spoken and written instructions and denying any attention difficulties).

would have resulted in a disability finding at Step 5.   (ECF No. 22 at 15-16).  But such speculation is not only unsupported by the record, but it also ignores the substantial contrary evidence cited by the ALJ.  Plaintiff's argument is merely a veiled invitation for the undersigned to reweigh the evidence and substitute its judgment for that of the ALJ, neither of which the Court will do. *Winschel*, 631 F.3d at 1178 (the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ].").

Thus, substantial evidence supports the ALJ's Decision and the ALJ fully considered Dr. Gordon's opinion.  Under these circumstances, the ALJ's error in failing to assign a specific weight to Dr. Gordon's opinion is harmless.  *See Lara v. Comm'r of Soc. Sec.,* 705 F. App'x 804, 812 (11th Cir. 2017) (holding that failure to state weight assigned to certain medical opinions was harmless because the ALJ's decision reflected ALJ's consideration of these opinions); *see also, Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015); *Hanback v. Comm'r, Soc. Sec. Admin.*, 581 F. App'x 840, 841 (11th Cir. 2014).

### B.     The ALJ's RFC Finding is Supported by Substantial Evidence

Next, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence.  (ECF No. 22 at 18-19).  More specifically, Plaintiff claims that the ALJ erred in not including postural, mental, or environmental limitations in Plaintiff's RFC.[15]  *Id*. at 19.  This argument flows from Plaintiff's previous argument, *see* Section V.A, *supra*, that the ALJ erred in not giving greater weight to the opinions of Drs. Goldstein and Gordon.  *Id*.  But Plaintiff's

---

[15] According to Plaintiff, the RFC fails to: (i) adequately reflect the severity of Plaintiff's physical impairments (as opined by Dr. Goldstein); (ii) include any postural limitations on bending sideways, climbing, climbing stairs and ramps, bending, and stooping (as opined by Dr. Goldstein); (iii) include a mental limitation to "simple and repetitive tasks" (as opined by Dr. Gordon); and (iv) include environmental limitations precluding Plaintiff from operating heavy machinery or a motor vehicle due to the purported effects of her narcotic medications.  (ECF No. 22 at 19).

argument regarding the weight given to these medical opinions has already been addressed and rejected.

In addition, Plaintiff summarily argues that the ALJ improperly discounted unidentified "evidence" from Plaintiff's long-term treating source (Dr. Krost).  *Id.*  Arguments raised "in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed waived."  *McClain*, 138 F.3d at 1422 (citation omitted).  Accordingly, the undersigned need not address Plaintiff's cursory and unsupported allegation that the ALJ improperly discounted Dr. Krost's treatment notes.  Plaintiff does not articulate what "evidence" the ALJ allegedly improperly discounted, or whether any of Dr. Krost's notes are, in fact, medical opinions that "reflect judgments about the nature and severity of [Plaintiff's] impairment(s), including [Plaintiff's] symptoms, diagnosis, and prognosis, what [Plaintiff] can still do despite impairment(s), and [Plaintiff's] physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Baez*, 2016 WL 11110181, at *7 (citation omitted).  In any event, the undersigned's review of Dr. Krost's treatment notes confirm that they do not contain medical opinions that the ALJ was required to evaluate.

A claimant's RFC is the most a claimant can do despite the limitations caused by her impairments.  20 C.F.R. §§ 404.1545, 416.945.  Along with age, education, and work experience, the ALJ considers a claimant's RFC in determining whether the claimant can work.  *Lewis*, 125 F.3d at 1440.  An RFC determination is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments.  *Id*.  Ultimately, the responsibility for determining a claimant's RFC rests with the ALJ, and the ALJ is not required to give any special significance to the opinion of medical sources on the issue.  *Lewen v. Comm'r of Soc. Sec.*, 605 F. App'x 967, 968 (11th Cir. 2015) (upholding ALJ's RFC finding that accounted for medical

opinions not specifically discussed by the ALJ). Here, the undersigned finds no error in the ALJ's RFC determination, which is supported by substantial evidence.

In addition, the ALJ properly considered the opinions of Drs. Goldstein and Gordon. *See* Section V.A, *supra*. Thus, the ALJ was not required to include in the RFC any mental or postural limitations that the ALJ found unsupported by the evidence.[16] *See, e.g., Iordan v. Comm'r, Soc. Sec. Admin.*, 579 F. App'x 775, 778 (11th Cir. 2014) (incorporating into RFC only those medical opinions that were supported by the record). Similarly, Plaintiff's argument that the ALJ should have included environmental limitations (to preclude Plaintiff from operating heavy machinery or a motor vehicle) based on the effects of Plaintiff's narcotic medications is unsupported by the record. To the contrary, Plaintiff repeatedly reported that she suffered no side-effects from her medications; that she was able to drive, go grocery shopping, and do household chores. (R. 210-17) (March 2017 Adult Function Report); *see also* (R. 279, 281, 283, 285, 287, 289, 291, 300, 302, 308, 310, 312, 314, 316, 318, 320, 322, 324, 326, 328, 330, 332, 334, 336, 338, 340, 342, 344, 346, 348, 350, 352, 354, 356) (Dr. Krost's treatment notes reflecting Plaintiff's reports that the medications allow her to remain active with less pain and/or denying any side-effects); (R. 294-98) (Dr. Gordon's mental status examination notes reflecting that Plaintiff arrived unaccompanied and by car, and can travel alone and drive).

Against this factual backdrop, the record reflects that the ALJ properly based his RFC determination after considering all relevant evidence in the record, including Plaintiff's activities

---

[16] As an aside, the undersigned notes that Plaintiff's request for postural limitations is moot in that Plaintiff's past relevant work as a manicurist is a sedentary job, which does not require Plaintiff to bend sideways, climb, walk stairs and ramps, bend, or stoop. DOT 331.674-010, 1991 WL 672803 (Manicurist). Plaintiff confirmed as much. (R. 199, 204, 219) (February 2017 Disability Report, February 2017 Work History Report, and June 2017 Work History Report reflecting that Plaintiff did no climbing, stooping, kneeling, crouching, or crawling during the workday).

of daily living, medical opinions, and lay observations regarding Plaintiff's severe and non-severe impairments.  (R. 18); *see also* SSR 96-8P, 1996 WL 374184, at 5 (July 2, 1996) (ALJ must consider all limitations and restrictions imposed by an individual's impairments, even those that are not severe, and RFC must be based on, among other things, medical history and findings, reports of daily activities, lay evidence, and recorded observations).  Accordingly, the undersigned finds that the ALJ's RFC assessment is supported by substantial evidence and the ALJ applied the correct legal standards.

### C.     The ALJ Properly Assessed Claimant's Symptoms and Limitations

Lastly, Plaintiff argues that the ALJ erred in evaluating her subjective symptoms and limitations.  (ECF No. 22 at 19-22).   In a nutshell, Plaintiff claims that the ALJ did not provide "good cause" for discounting her subjective complaints of pain, which were consistent with the medical record. *Id*. at 22.

The Eleventh Circuit has established a three-part "pain standard" that applies when a claimant attempts to establish disability through her own testimony regarding pain or other objective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  The pain standard requires: (1) evidence of an underlying medical condition; and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition; or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Id.*  Subjective pain testimony that is supported by objective medical evidence of a condition that can reasonably be expected to produce the claimant's symptoms is sufficient to sustain a finding of disability. *Hale*, 831 F.2d at 1011 (citations omitted). If the Secretary refuses to credit such testimony, the Secretary must articulate explicit and adequate reasons. *Id.* (citation omitted).  The ALJ is not required to use any particular language in applying the pain standard, as long as she sufficiently articulates the reasons for discrediting Plaintiff's

27

testimony.  *Davis v. Barnhart*, 153 F. App'x 569, 571-72 (11th Cir. 2005); *see also Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (ALJ opinion need not use particular language or adhere to a particular format, and the decision should be read "as a whole").  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

Here, the ALJ concluded that, although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 23).  The ALJ then articulated several reasons for finding that Plaintiff's testimony was not entirely consistent with the evidence of record.

Among these reasons, the ALJ noted: (i) treatment notes reflecting Plaintiff's reports that the medications "kept the pain tolerable with minimal side effects" and "allowed for an increased level of activity" (R. 24); *see also* (R. 279-92, 300-03, 308-57); (ii) examination results that Plaintiff's lower extremities showed no atrophy, range of motion was within normal limits, and motor strength was 5/5 throughout with no sensory deficits and normal reflexes (R. 24); *see also* (R. 279-92, 300-03, 308-57); (iii) Plaintiff's last visit to Dr. Krost on September 11, 2018, at which Plaintiff reiterated that the medication kept her pain tolerable with minimal side effects and requested renewals to help her function at a better level (R. 24); *see also* (R. 356-57); (iv) Plaintiff's report that she was travelling to care for her father (R. 24); *see also* (R. 356-57); (v) notes from Plaintiff's January and September 2016 emergency room visits reflecting that her back was nontender with normal range of motion, and denying back pain (R. 25); *see also* (R. 255, 257, 270); (vi) Plaintiff's conservative treatment with pain management (R. 25, 26); *see also*

(R. 279-92, 300-03, 308-57); (vii) Plaintiff's good results with the medication (R. 25); *see also* (R. 279-92, 300-03, 308-57); (viii) Plaintiff's generally unremarkable musculoskeletal and neurological examinations with full range of motion and normal strength, normal sensory, and normal gait (R. 26); *see also* (R. 255, 257, 270, 279-92, 300-03, 308-57); (ix) treatment notes and consultative evaluation reflecting that Plaintiff was in no acute distress, was well-oriented, and cooperative (R. 26); *see also* (R. 279-92, 300-03, 308-57); (x) Plaintiff's activities of daily living, including self-care, caring for her autistic son, cooking, doing housework, shopping for groceries, driving, caring for her father, and managing funds (R. 26); *see also* (R. 211, 212, 356-57); and (xi) Plaintiff's ability to walk independently, without an assistive device (R. 26); *see also* (R. 216).

Against this backdrop, and having carefully reviewed the record, the undersigned finds that the ALJ adequately articulated his reasons for discounting Plaintiff's allegations of disabling pain, which are supported by substantial evidence.  To summarize, the ALJ properly considered the extent of Plaintiff's activities of daily living in assessing the consistency of her allegations. (R. 26).  20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).  While the ability to engage in daily living activities does not automatically disqualify a claimant from receiving disability benefits, the Commissioner may nonetheless consider a claimant's daily activities, among other evidence, in determining whether a claimant is disabled.  *See Majkut v. Comm'r of Soc. Sec.,* 394 F. App'x 660, 663 (11th Cir. 2010) (citations omitted).  In addition, the ALJ properly considered Plaintiff's conservative treatment history and improvement with medication.  (R. 22, 25, 26); *see* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v); *see also Cooper v. Comm'r of Soc. Sec.,* 521 F. App'x 803, 807-08 (11th Cir. 2013) (no error in ALJ's consideration of claimant's improvement). Ultimately, credibility determinations are the province of the ALJ, and a clearly articulated credibility finding with substantial supporting record evidence will not be disturbed.  *Moore*, 405

F.3d at 1212; *Foote*, 67 F.3d at 1561-62.  Here, the ALJ specifically considered Plaintiff's allegations of pain, assessed Plaintiff's subjective allegations in the context of all the other evidence, and applied the proper legal standard.  *See generally Carson,* 440 F. App'x at 864.

## VI.    RECOMMENDATION

Accordingly, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 22) be **DENIED,** that Defendant's Motion for Summary Judgment (ECF No. 23) be **GRANTED**, and that the ALJ's Decision be **AFFIRMED** for the reasons set forth above.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b).  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1 (2020); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida, on February 18, 2021.


_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Raag Singhal
    All Counsel of Record